[Cite as *Joseph v. Moon*, 2015-Ohio-3994.]

COURT OF APPEALS
COSHOCTON COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| NAMON NICK JOSEPH | : | JUDGES: |
| | : | Hon. W. Scott Gwin, P.J. |
| Plaintiff-Appellee | : | Hon. Sheila G. Farmer, J. |
| | : | Hon. Craig R. Baldwin, J. |
| -vs- | : | |
| | : | |
| CHARLES MOON, ET AL. | : | Case No. 2014CA0025 |
| | : | |
| Defendants-Appellants | : | O P I N I O N |


CHARACTER OF PROCEEDING:     Appeal from the Court of Common
Pleas, Case No. 2013-CI-0081



JUDGMENT:     Affirmed



DATE OF JUDGMENT:     September 29, 2015



APPEARANCES:

For Plaintiff-Appellee                               For Defendants-Appellants

CHRISTOPHER M. SHOOK                 DOUGLAS M. MANSFIELD
P.O. Box 4190                                     9980 Brewster Lane
33 West Main Street                         Suite 150
Newark, OH  43055                          Powell, OH  43065

*Farmer, J.*

{¶1} On February 14, 2001, appellants, Charles and Gayle Moon, leased property to appellee, Namon Nick Joseph. The lease was for five years with the option to renew for two additional five year terms. Rent was due on the 1st. Appellee operated a restaurant/bar in the space called "SportZone."

{¶2} On February 28, 2006, the parties agreed to extend the lease for another five years. Under the extension, rent was due on the 25th day of the preceding month. In July 2006, a fire destroyed SportZone. SportZone reopened in August 2007 and occupied a larger space; therefore, the parties agreed to an increase in rent. The increase was not memorialized in writing.

{¶3} At some point, appellee expressed his desire to renew the lease for a second additional five year term. The parties never reached an agreement on extending the lease. On February 17, 2011, appellants terminated the lease. At the time, appellee was attempting to open another SportsZone in Sunbury, Ohio.

{¶4} On February 15, 2013, appellee filed a complaint against appellants, claiming breach of contract, conversion, tortuous interference with business relationships, and wrongful eviction. The latter two claims were dropped prior to/during trial. On March 18, 2013, appellants filed an answer and counterclaim for breach of contract and conversion.

{¶5} A jury trial commenced on August 28, 2014. The jury found in favor of appellee on his claims in his complaint, in favor of appellee on appellants' breach of contract claim, and in favor of appellants on their conversion claim. The jury awarded

appellee a total of $230,000.00 and appellants $67.77. The awards were reduced to judgment via judgment entry filed September 24, 2014.

{¶6} On October 8, 2014, appellants filed a motion for judgment notwithstanding the verdict or in the alternative, motion for new trial or remittitur. By judgment entry filed November 4, 2014, the trial court denied the motion.

{¶7} Appellants filed an appeal and this matter is now before this court for consideration. Assignments of error are as follows:

I

{¶8} "THE AWARD OF $200,000 IN DAMAGES ON JOSEPH'S BREACH-OF-CONTRACT CLAIM IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

II

{¶9} "THE FINDING THAT THE MOONS HAD A DUTY TO RENEW THE LEASE IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

III

{¶10} "THE FINDING THAT THERE WAS AN ORAL MODIFICATION OF THE LEASE IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

IV

{¶11} "THE AWARD OF $30,000 IN DAMAGES ON JOSEPH'S CONVERSION CLAIM IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

I

{¶12} Appellants claim the award of $200,000.00 in damages for appellee's breach of contract claim/lost profits is against the manifest weight of the evidence. We disagree.

{¶13} On review for manifest weight, the standard in a civil case is identical to the standard in a criminal case: a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine "whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Martin,* 20 Ohio App.3d 172, 175 (1st Dist.1983). See also, *State v. Thompkins*, 78 Ohio St.3d 380, 1997-Ohio-52; *Eastley v. Volkman,* 132 Ohio St.3d 328, 2012-Ohio-2179.

{¶14} We note the weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact. *State v. Jamison,* 49 Ohio St.3d 182 (1990). The trier of fact "has the best opportunity to view the demeanor, attitude, and credibility of each witness, something that does not translate well on the written page." *Davis v. Flickinger,* 77 Ohio St.3d 415, 418, 1997-Ohio-260.

{¶15} Appellants specifically challenge the credibility of Plaintiff's Exhibit 18 and appellee's testimony as to lost profits. Appellants do not contest the admissibility of the exhibit, and acknowledge the exhibit was admitted without objection, therefore the issue of admissibility has been waived on appeal. Appellants' Brief at 6; T. at 453, 464.

{¶16} Plaintiff's Exhibit 18 consists of a "Profit Center Report" from August 6, 2007 to December 31, 2007, a "Profit Center Report" from January 1, 2008 to December 31, 2008, a "Profit & Loss" for January through December 2009, and a "Profit & Loss" for January through December 2010. The Profit Center Reports indicate the operator who generated the reports was "Nick," and the Profit & Loss documents were prepared on an "Accrual Basis."

{¶17} Appellee testified he was experienced in the restaurant business and knew the inner workings of how a restaurant operated because he had worked in his father's restaurant since he was a teenager. T. at 249. Appellee explained Plaintiff's Exhibit 18 was generated from actual data entered by him in QuickBooks, his accounting program. T. at 274, 276-278. He specifically testified to his profits for the restaurant which did not include his monthly salary of $1,000.00. T. at 279-280. Appellee testified he expected his profit margins to continue in the range of $35,000.00 to $45,000.00 per year. T. at 320. Taking the average amount, $40,000.00, times the five years of lost business due to the lease termination, amounts to $200,000.00.

{¶18} To counter appellee's testimony, appellants presented the testimony of employees who were working at SportsZone just prior to the lease termination. Each testified to a lack of supplies and food and run down conditions under the VanSickle management while appellee was busy opening another venue in Sunbury, Ohio. T. at 484-485, 500-501, 517-518.

{¶19} As stated previously, credibility and believability are within the province of the jury. The jury could very well have found appellee's testimony more worthy of belief.

{¶20} Upon review, we find sufficient credible evidence in the record to support the jury's award of $200,000.00 in damages for lost profits. We do not find the jury lost its way.

{¶21} Assignment of Error I is denied.

## II, III

{¶22} Appellants claim the jury's findings that they had a duty to renew the lease and there was an oral modification of the lease are against the manifest weight of the evidence. We disagree.

{¶23} Appellants argue (1) appellee did not fulfill the conditions precedent required to renew the lease by failing to timely pay the rent and failing to seek written approval to make additions or alterations to the leased premises, and (2) appellee did not timely exercise the option to renew.

{¶24} No specific interrogatory was given to the jury on whether appellee failed to fulfill a condition precedent to renewing the lease. There is only a general verdict on the issue of breach of contract. Appellants did not object to the jury charge, and did not specifically request a charge on condition precedent that they now argue.

{¶25} As a reviewing court, we are left to determine if the evidence establishes a breach of contract. The evidence reveals, and appellants concede in their closing argument, that the parties, over the course of their ten years together, conducted business in a very laissez-faire method. The restaurant suffered a catastrophic fire in 2006, and the parties managed to reconstruct it with insurance proceeds and appellee's labor. T. at 265, 267, 276. The restaurant reopened at twice the size and obligations changed, including a rent increase, but the parties never memorialized the changes in writing. T. at 130, 269, 331, 586. All of this was done by mutual agreement and "discussions on street corners" without any written agreements. This court does not fault the "business by handshake" that the parties operated under.

{¶26} Plaintiff's Exhibit 1/Defendant's Exhibit B, the original lease dated February 14, 2001, is the only finalized written lease between the parties and contained the following language in part under a "Term" provision:

The term of this Lease shall be for five (5) years, commencing on the 1st day of March, 2001 and ending on the last day of February, 2006.

Lessee shall have the option to renew this Lease for two (2) additional five (5) year terms at the expiration of the original term or extended term at a rental amount to be agreed upon by the parties.

Lessee's right to exercise this option is expressly contingent upon Lessee having timely performed all conditions and covenants on Lessee's part to be performed as contained herein.

Notice of the exercise of such option shall be given by the Lessee to the Lessor at least one hundred eighty (180) days before the expiration of the term sought to be extended, which notice must be in writing and delivered to the Lessor; and its (sic) is expressly agreed by and between the parties hereto that time is of the essence in the giving of said notice.

{¶27} An "Additions or Alterations" provision stated: "Lessee covenants that he will not make additions or alterations to the leased premises without the prior written approval of the Lessor."

{¶28}   Under the "Rental" provision, the payment schedule provided for rent to be due on the 1st of the month and under a "Forfeiture" provision, stated timely fulfillment of the covenants was of the essence:

The Lessee covenants and agrees to and with the Lessor, its successors and assigns, to pay said rents and any other payments herein provided for, and to keep and perform the covenants and agreements herein contained, on the part of the Lessee to be kept and performed. Time being of the essence in the performance of any of the covenants, agreements or conditions herein by it to be kept or performed, and if said default shall continue for 20 days, or if the Lessee shall abandon or vacate said premises before the expiration of this Lease,***then and in that event, and without the giving of any notice whatsoever, this Lease and the term hereby granted shall at the option of the Lessor cease and determine, and the Lessor may give to the Lessee notice of intention to end the term of this Lease***.

{¶29}   The lease included the following "Waiver" provision: "The waiver by Lessor of, or the failure of the Lessor to take action with respect to the breach of any term, covenant or condition contained herein shall not be deemed a waiver of any subsequent breach of the same or any other term, covenant, or condition hereof."

{¶30}   After the first five year period, appellee exercised his option to renew the lease for an additional five years.  Plaintiff's Exhibit 6/Defendant's Exhibit E, the lease

extension dated February 28, 2006, contained the following provision: "Rent will be paid on or before the 25th Day of the preceding month. Rents received after the 1st day of the month for which the monies are due will be subjected to a ten percent (10%) penalty payable on demand." The lease extension also stated, "All other conditions and terms of the original lease remain in effect."

{¶31} Following the agreed lease extension, the fire closed the restaurant for over a year. The restaurant reopened at twice the size with an agreed increase in rent. T. at 269. Appellee testified that although the lease extension stated the rent was due on the 25th, he paid the rent on the 1st with no complaint from appellants. T. at 269-272, 342-343. Appellants argue appellee admitted to not timely paying the rent, whether it was due on the 25th of the preceding month or on the 1st of the month, and appellee failed to pay the rent for February 2011.

{¶32} Appellee supported his testimony with Plaintiff's Exhibit 7. T. at 270. Said exhibit is a compilation of the rent paid from May 2008 to January 2011. It demonstrated a pattern at various times when the rent was paid, but never on the 25th of the preceding month. T. at 136, 139, 380, 441. Appellee testified appellants were understanding in this regard. T. at 269-270. Appellant Charles Moon testified the rent was usually paid on the 1st or after without penalty, and he admitted to being flexible. T. at 132, 585.

{¶33} Although there is some testimony that February 2011's rent was paid, it is conceded that appellants evicted appellee for nonpayment of rent on February 17, 2011. T. at 272-274, 293, 590, 611; Plaintiff's Exhibit 12/Defendant's Exhibit G.

{¶34} The jury was then left with the following question to resolve: When was the rent due, on the 25th of the preceding month or the 1st? We find there is evidence to support the conclusion that it was due on the 1st and the lease termination was issued in contravention of the twenty day grace period under the "Forfeiture" provision of the original lease. T. at 117-118.

{¶35} The next issue is whether appellee failed to seek written approval to make additions or alterations to the leased premises. Appellee admitted to making changes to the facility from time to time and not seeking appellants' consent in writing. T. at 355. Appellee stated "[w]e always had a conversation about it." *Id.* As stated above, the parties worked together after the fire to reconstruct the restaurant, and most of the time, operated under a laissez-faire method of conversations without any written agreements. Appellants did not question the lack of written approval at that time, in 2006 to 2007, and did not raise this issue to the jury. The only "broken" covenant argued to the jury was the untimely payment of rent. T. at 657-658.

{¶36} The last issue for resolution was whether appellee had exercised his right to renew the lease for the second additional five years. Appellee testified he sent a notice on August 3, 2010, one hundred eighty days before the expiration, and another on January 17, 2011. T. at 280-281, 288-289, 334-335; Plaintiff's Exhibits 9 and 10/Defendant's Exhibit F. Appellant Charles Moon denied ever receiving the August 2010 notice. T. at 155-156. We find there is evidence to support the conclusion that appellee timely exercised his right to renew.

{¶37} As with all of these issues, the jury was forced to resolve the issues on credibility or "who do you trust"? It is clear that the jury, after hearing three days of

testimony, found appellee's position more credible. With evidence presented on the opposing view, the burden was on appellee to prove his case by a preponderance of the evidence.

{¶38} Upon review, we find sufficient credible evidence in the record to support the conclusions that it was more likely than not that appellee did not breach the contract, was not in default on February 17, 2011, and exercised his option to renew in a timely manner. We do not find the jury lost its way.

{¶39} Assignments of Error II and III are denied.

IV

{¶40} Appellants claim the award of $30,000.00 in damages for appellee's conversion claim is against the manifest weight of the evidence. We disagree.

{¶41} Specifically, appellants claim appellee could not distinguish between which items were his and which belong to his corporation, JAYEN, INC. and there was no definitive evidence as to damages. In support, appellants argue the liquor license agreement between the parties proved that JAYEN INC. owned the property. Appellee argues the agreement related only to the liquor license and not personal property on the premises.

{¶42} We note the 2001 lease and the 2006 lease extension indicated that appellee as an individual entered into the agreements. JAYEN, INC. was the vehicle that paid the income tax for the restaurant's operation in 2004 and 2005. Plaintiff's Exhibits 34 and 35. Bills for personal property for the restaurant were in the name of appellee individually or the entity "SportZone." Plaintiff's Exhibits 24-27.

{¶43} Appellants' argument to the jury was that appellee had no proof that he paid the bills. No motion or argument was made as to JAYEN, INC. being the proper party in interest or the owner of the items.

{¶44} Appellee testified to $70,000 in converted property. T. at 317-318; Plaintiff's Exhibit 33. The jury awarded $30,000.00 in damages. It is clear the jury, with its "dividing-rod" on the issue of credibility, chose to believe some of appellee's damages and as appellee conceded, some items were depreciated over the course of time, and believed appellants' contention that some items were fixtures that remained in the restaurant.

{¶45} Without specific interrogatories, we cannot item-by-item determine what the jury found. However, it is clear they dismissed appellee's claim for $12,000.00 in miscellaneous property from Plaintiff Exhibit 33, but chose others they considered as proven.

{¶46} Appellee testified to the cash on hand, alcohol on the premises, office supplies, restaurant supplies that were not fixtures, food, and table tops that belonged to him at the time of the eviction that were not returned to him. T. at 96, 181, 185, 275-276, 298-300, 306-309, 310-311, 317-318, 425; Plaintiff's Exhibits 24-27, 33. Appellant Charles Moon agreed that when he took over the restaurant, these items were on the premises. T. at 581-583.

{¶47} Upon review, we find sufficient, credible evidence in the record to support the jury's award of $30,000.00 in damages for items converted. We do not find the jury lost its way.

{¶48} Assignment of Error IV is denied.

{¶49}  The judgment of the Court of Common Pleas of Coshocton County, Ohio is hereby affirmed.

By Farmer, J.

Gwin, P.J. and

Baldwin, J. concur.

SGF/sg 810